HEBER, Appellant, vs. ESTATE OF HEBER, Respondent.

*April 22—May 11, 1909.*

*Action: Waiver of tort: Trover and conversion: Scope of remedy:
Trial of questions of title: Executors and administrators: Right
to prosecute actions: Pleading: Defects: Waiver: Claims: Value
of services: Evidence: Conclusiveness: Gifts: Presumptions: Ap-
peal and error: Findings, when disturbed: Payment as a de-
fense: Necessity of pleading: Immaterial error.*

1. An executor or administrator may in an appropriate case main-
   tain an action for conversion, or he may waive the tort and sue
   on implied contract.
2. Questions of title can be tried in an action for conversion as well
   as in an action for replevin.
3. Courts should not deny to personal representatives of deceased
   persons the ordinary remedies that are open to other suitors.
4. Objection that a cause of action stated as a counterclaim is not
   pleadable as such, when apparent on the face of the answer, if
   not taken by demurrer is waived.
5. Where the evidence of the value of services rendered a decedent
   varies, although no evidence as to value is offered in behalf of
   the estate, the court is not thereby precluded from adopting the
   figures of witnesses who testified to the lowest scale of wages,
   and such finding is one supported by evidence and is not con-
   trary to the uncontradicted evidence.
6. In the absence of a contract whereby a decedent agreed to pay
   his son for his services, a conveyance of land by the father to
   the son would be considered a gift; but the existence of a con-
   tract, together with the fact that at the time of the convey-
   ance the decedent was largely in debt for such services, and
   the absence of evidence of payments otherwise made on such
   indebtedness, furnishes evidence sufficient to support a finding
   offsetting the value of the land against the son's services.
7. Findings of the trial court as to disputed facts not against the
   clear preponderance of the evidence will be affirmed.
8. Payment, to be available as a defense, ordinarily must be pleaded.
9. Under the provisions of sec. 2829, Stats. (1898), forbidding re-
   versals for merely technical errors, error, if any, in allowing
   the value of land conveyed by the decedent to the claimant to
   be offset against the claim must be regarded as immaterial,
   where that issue, though not pleaded, was fully litigated.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The appeal is from a judgment rendered on the claim filed by *Carl Heber* against the estate of his father, Charles Heber, deceased.

The court found (1) that for twenty years prior to the death of the decedent the claimant performed work and labor upon decedent's farm, living with him as a member of his family upon the expectation and understanding of both claimant and decedent that such services should be paid for at their reasonable and fair value upon or prior to the death of the decedent; (2) that for the first seventeen years of said period the services of said claimant were reasonably worth the sum of $100 per year over and above the board and clothing furnished by the decedent to the claimant, and that for the last three years of said period the services of the claimant were reasonably worth the sum of $200 per year over and above board and clothing; (3) that about three years before the death of the decedent he and his wife conveyed to the claimant forty acres of land which decedent had theretofore purchased for that purpose for the sum of $2,200, which sum was its reasonable and fair value; (4) that from the time of such purchase to the time of his death the decedent retained possession and control of said premises and enjoyed the use of the same with the consent of the claimant, and that the reasonable and fair value of the use of the said farm per year, above the taxes paid by decedent, was the sum of $100; (5) that after the death of decedent the claimant took and appropriated and converted to his own use the money left in the house by decedent at his death, and belonging to the estate, to the amount of $458.78; that claimant also sold grain belonging to said estate to the amount and value of $149.60 and retained the proceeds of such sale, and that the claimant also collected, received, and appropriated checks and milk money belonging to the estate to the amount and value of

$107.52; (6) that after the death of the decedent the claimant took, applied, and converted to his own use personal property belonging to the estate, consisting principally of live stock, to the amount and value of $504.

As conclusions of law the court found that the claimant should be allowed the sum of $2,300 for his services, and the sum of $400 for the use of the land of the claimant by decedent, making in all the sum of $2,700; and that he should be charged with the sum of $2,200 paid for the farm, and with the sum of $1,219.90 on account of the money and personal property belonging to the estate which was taken and appropriated by claimant to his own use, together with certain interest allowances. Upon these findings judgment was entered in favor of the executors of the estate and against the claimant for $925.94, damages, together with the costs of the proceeding, from which judgment the claimant appeals.

The appellant assigns as error the rulings of the court (1) in overruling the appellant's demurrer *ore tenus,* (2) in admitting testimony tending to support respondent's counterclaim, (3) in its findings of fact and conclusions of law, (4) in granting judgment in favor of the executors, (5) in allowing the value of the farm conveyed claimant to be offset against the value of his services, (6) in admitting testimony against appellant's objection, and (7) in excluding testimony offered by appellant.

For the appellant there was a brief by *Duffy & McCrory,* and oral argument by *J. H. McCrory.*

*T. L. Doyle,* for the respondent.

BARNES, J. 1. The executors of the estate of Charles Heber, deceased, filed objections in the county court to the allowance of the claim filed by his son, *Carl Heber.* They also interposed a counterclaim for the value of certain personal property alleged to have been owned by the decedent at the time of his death and thereafter converted by the claimant. The tort was expressly waived, and the executors stated in

their counterclaim that they would rely upon an implied contract to pay what the property was reasonably worth. The claimant by reply pleaded as one defense to the counterclaim that the pretended cause of action stated therein was not pleadable in the action. A demurrer *ore tenus* was interposed to the counterclaim for the reason stated, as well as for other reasons, and was overruled. Such ruling is assigned as error.

We do not deem it necessary to decide whether sec. 2656, Stats. (1898), would admit the matter set up in the objections and answer to be pleaded as a counterclaim. The answer stated facts sufficient to show a conversion, and we see no reason why executors may not in an appropriate case maintain an action for conversion. Neither is any reason apparent why they may not waive the tort and sue on implied contract. *Norden v. Jones,* 33 Wis. 600; *Walker v. Duncan,* 68 Wis. 624, 32 N. W. 689; *Western Assur. Co. v. Towle,* 65 Wis. 247, 26 N. W. 104; *Barth v. Graf,* 101 Wis. 27, 76 N. W. 1100.

We regard the position of appellant's counsel, that replevin is their only remedy, as untenable, and no authorities are cited to sustain such contention. Title can be tried in an action of conversion as well as in an action of replevin, and the courts should not deny to personal representatives of decedents the ordinary remedies that are open to other suitors, where property to which they have the legal title has been unlawfully converted. The proof is sufficient to sustain the finding that there was in fact a conversion.

The objection that the cause of action stated was not pleadable as a counterclaim, if well founded, was apparent on the face of the answer. No fact is disclosed by the reply that enlarges or illuminates the averments of the answer in this regard. The objection should have been taken by demurrer, and, not having been so taken, it was waived. Sec. 2660, Stats. (1898).

2. Several witnesses were sworn on behalf of claimant,

who testified to the prevailing wages paid farm laborers during the period claimant was working for his father, after the alleged agreement was made between them that he should be paid for his services. No evidence was offered upon the point by the respondent. The amount allowed the claimant for his services was considerably less than he would be entitled to receive had the court followed the evidence most favorable to the respondent and adopted the figures of the witness who testified to the lowest scale of wages. There was also evidence to the effect that the claimant "took a man's place," and that he was "a good average man." It is contended that the allowance made claimant by the court is wholly unsupported by any evidence in the case and is contrary to the uncontradicted evidence.

The court in reaching the conclusion arrived at was no doubt governed by the following considerations, among others: (1) Neither the claimant nor any other witness testified to what the services rendered were actually worth, and that was the real question in the case. (2) During the greater portion of the employment the farm consisted of a forty-acre tract, while the laborers concerning whom evidence was offered were employed on farms containing 160 acres or more. (3) Under the circumstances disclosed by the testimony the inference would be well-nigh irresistible, notwithstanding the evidence of the claimant, that he was furnished clothing, and perhaps spending and other moneys, from time to time by his father; and (4) that the work required of a son by his father would hardly be as exacting or as burdensome as that required of the ordinary farm laborer by his employer. We cannot say that the evidence referred to was conclusive upon the court, or that it was error for the court to refuse to adopt a scale of wages within the figures testified to, inasmuch as such testimony did not go directly to the value of the services rendered by the claimant, and in view of the other considerations enumerated.

3. It is contended that the court erred in offsetting

against the claim presented for services the value of forty acres of land conveyed by the decedent to the claimant about three years prior to the death of the former. In support of such contention it is urged that there is no evidence tending to show that the decedent ever intended that his son should be charged with the value of this land, and that the relation of the parties was such that the transaction should be treated as a gift, and not as a payment in whole or in part for services rendered.

In the absence of a contract whereby the decedent agreed to pay the claimant for his services the transfer could not be viewed in any other light than that it was intended as a gift. The existence of the contract of employment, however, places the transaction in an entirely different light. When the land was conveyed the decedent was indebted to the claimant in a large sum of money for a long period of services, and the evidence does not disclose that any payments had been made upon the indebtedness. It was natural enough that the son might want something to show for his work and that the father should desire to reduce the amount of the claim. Indeed, the circumstances tending to show that the father did not intend that the son should recover wages, and retain the forty-acre tract without accounting for its value, are quite persuasive. He had six other children, one of them a girl forty-three years of age, who was not strong in mind or body and who had always lived at home. To her he left a legacy of $1,000. The other children for the most part lived and worked at home until they became of age. To each of them he bequeathed $500. There is little doubt that the testator intended that the claimant should have all his property after the legacies bequeathed to the other children were paid. It seems equally clear that he intended that such legacies should be paid. The inventory value of decedent's property, plus the value of some property not included therein, was but $5,265.68. The sum of $200 was set apart for a monument. The amount of the bill presented against the estate by the

claimant was $7,581. The amount allowed claimant for his services and for the rental value of the forty-acre tract was $2,700. On the basis of this allowance, which it is claimed should be at least $1,000 more, the estate would fall over $1,100 short of paying the specific legacies provided for in the will, without taking into account funeral expenses or costs of administration. We think these facts and circumstances furnished ample warrant for the decisions of the county court and of the circuit court in making the offset, and that the rulings in this behalf were correct.

4. The court found that the claimant converted to his own use certain moneys which belonged to the decedent at the time of his death, and also certain other personal property, consisting of live stock and farm implements. It is urged that the court erred in not holding that at least a portion of this property belonged to the claimant, including the sum of $150 in money, which it is asserted was received upon the sale of a horse owned by claimant. Without discussing the evidence in detail bearing upon the subject, we do not think the findings of the trial court in reference to these disputed items are against the clear preponderance of the evidence. In fact, there is little in the record in the way of direct evidence as to ownership of the property, and the legitimate inferences to be drawn from established facts, we think, rather preponderate in favor of the findings. Besides, no attempt was made by the claimant to show that he did not acquire the property in dispute from his father, or that he paid anything for it except by way of work performed on the farm. The inference is well-nigh irresistible that if the title to the property was in the claimant he acquired it in much the same way that he acquired the forty-acre tract, and that the value of the property should be offset against his claim for the same reasons that justified a like offset being made in the case of the transfer of the land.

5. The executors made no reference in their answer to the forty-acre tract conveyed to the claimant, and it is urged

that the evidence was improperly received which showed the fact of conveyance and the value of the property. Payment is a defense that must ordinarily be pleaded in order to be available, and the transfer of the parcel of land was treated by both courts as a payment of the claim sued on, to the extent of its value. We find no statute or county court rule now in force requiring the personal representative of a decedent to interpose any such pleading in order to enable him to defeat recovery on a claim filed against the estate by showing payment. On the contrary, County Court Rule XIV expressly provides that "no claim shall be allowed, whether objected to or not, until the court is . . . satisfied that it is a just claim."

If it be conceded that the objection made was tenable and should have been sustained, it does not follow that reversible error has resulted. The question was litigated in the county court, and that court decided that the value of the land should be offset against the amount of the claim. It appears that the question was fully litigated in the circuit court. The appellant does not urge that he was taken by surprise or precluded from showing any material fact by reason of the failure to plead payment. It must have been manifest to the attorneys for the claimant that if the circuit court held the objection good it would have permitted an amendment of the pleading. Not to have done so would have been an abuse of discretion. It would be an obvious perversion of justice to impose an unjust burden of $2,200 upon this estate because a defense of payment which was litigated was not pleaded. If this court were to reverse the judgment for the reason urged, it would be its duty to direct that a new trial be had upon proper pleadings. As all of the facts were presented in the former trials that by any reasonable probability would be available on a new trial, the error complained of should be disregarded as immaterial under sec. 2829, Stats. (1898).

*By the Court.*—Judgment affirmed.