IN RE ESTATE OF ADDIE E. ANDERSON, DECEASED. THEODORE KNOELL, EXECUTOR, APPELLANT, V. D. A. GIBBONS, APPELLEE.

27 N. W. 2d 632

Filed May 23, 1947. No. 32224.

*Mapes & Johnson,* for appellant.

*Charles H. Yost,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

A claim was filed by appellee, hereinafter called claimant, against the estate of Addie E. Anderson to recover unpaid principal and interest upon a promissory note executed and delivered to her as maker to claimant as payee. The instrument, dated December 30, 1930, was executed and delivered in and due and payable in Kansas. It was for the principal sum of $100, due six months from that date with interest at percentages stated therein. Claimant, to avoid an apparent bar of the statute of limitations, alleged in his petition for allowance of the claim that on May 11, 1933, the maker paid $9.67 and on August 11, 1942, the maker paid $3.50 on the note, which payments were endorsed thereon. The executor filed objections to allowance of the claim, denying that the alleged payments were ever made and alleging that the claim was barred by the statute of limitations of both Kansas and Nebraska. It was stipulated in the record, however, that the law applicable to the statute of limitations was the same in both states.

The county court allowed the claim, and upon appeal to the district court a jury returned a verdict finding for. claimant, upon which judgment was entered. The executor's motion for new trial was overruled, and he appealed to this court. His assignments of error were seven in number, but in our view of the case we are required to discuss only the question whether or not the verdict and judgment thereon were sustained by the evidence. We conclude that they were not.

Preliminary to any recitation of the evidence, however, we will discuss rules of law applicable in such cases.

Section 25-205, R. S. 1943, provides: "An action upon

\* \* \* any agreement, contract or promise in writing \* \* \* can only be brought within five years."

Section 25-216, R. S. 1943, provides: "In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgement of an existing liability, debt or claim, or any promise to pay the same shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgement or promise; \* \* \*."

In re Estate of McEachen, 139 Neb. 250, 297 N. W. 153, called attention to the fact that prior to 1913 the word "voluntarily" was not in the statute, but that the commission on revision inserted it to clarify the statute and conform to prior decisions of this court holding that such payments must have been voluntarily made.

It has long been the rule that: "In this state the statute of limitations is a statute of repose; it prevents recovery on stale demands. If the petition in an action sets forth facts which show upon its face that it is barred by statute, and in avoidance thereof further facts are alleged to remove the bar of the statute, all of which are positively denied by the answer, together with the added allegations that the cause of action is barred by the statute of limitations, the plaintiff cannot recover without first establishing the facts so alleged in avoidance." Baxter v. National Mtg. Loan Co., 128 Neb. 537, 259 N. W. 630. See, also, Scott v. DeGraw, 90 Neb. 274, 133 N. W. 179; 37 C. J., Limitations of Actions, § 773, p. 1246.

We turn then to a discussion of the elements which must be established by the evidence to toll the statute of limitations in cases similar to the one at bar.

As early as Kyger v. Ryley, 2 Neb. 20, this court, in discussing whether or not an alleged part payment of a note otherwise barred removed the bar of the statute, used the following language: "The case wants the very first element of a valid payment to take the case out of

the statute, which is an intelligent, or at least conscious, consent on the defendant's part, that what was due to him should be applied on his debt."

The statute here involved was discussed by this court in Whitney, Clark & Co. v. Chambers, 17 Neb. 90, 22 N. W. 229. In that opinion it was said: "* * * a part payment in order to bar the statute must be equivalent to an acknowledgement of an existing liability or to a promise to pay the same."

In Moffitt v. Carr, 48 Neb. 403, 67 N. W. 150, after citing the above case with approval, this court held: "Part payment, within the meaning of section 22 of the Code of Civil Procedure, is a voluntary payment made by the debtor himself or by someone authorized by him to make such payment." See, also, 34 Am. Jur., Limitation of Actions, § 339, p. 266.

Thereafter, in Bosler v. McShane, 78 Neb. 86, 110 N. W. 726, affirmed on rehearing 78 Neb. 91, 113 N. W. 998, this court said, in speaking of the statute: "This cannot be construed so as to permit a payment made by a volunteer * * *."

In re Estate of McEachen, *supra*, cited and quoted with approval from the above cases. In that opinion it was also said: "A voluntary payment is one that is intentionally and consciously made. It calls for the free exercise of the will. It involves the element of assent and an acknowledgement of the existence of the debt."

In 34 Am. Jur., Limitation of Actions, § 338, p. 265, the above propositions are restated by use of the following language: "The principle on which part payment takes a case out of the statute of limitations is that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, the running of the statute will not be stopped by reason of such payment. Therefore, a part payment, to have the effect of tolling the statute of limitations, must be made and accepted as payment of part of the particular indebtedness in ques-

tion, under circumstances such as warrant a clear inference that the debtor recognizes the whole of the debt as an existing liability, and indicate his willingness, or at least his obligation, to pay the balance. The payment must be distinct, unequivocal, and without qualification, and the debt or obligation must be definitely pointed out by the debtor, and an intention to discharge it in part made manifest."

Likewise, in 37 C. J., Limitations of Actions, § 782, p. 1252, it is said: "In order to take a claim, otherwise barred, out of the statute by proof of part payment within the statutory period preceding the commencement of the action, there must be clear and positive evidence of the making of such a payment within the required time; that the payment was made on the claim in suit; that the intention was to make a part payment; and that the payment was made by the debtor or some one authorized to act for him. While the indorsement on a note of part payment may, in connection with other evidence in corroboration thereof, be sufficient evidence of part payment, standing alone it is not sufficient evidence of part payment, or of the time thereof, especially where the indorsement was made by the payee or holder; it is necessary to adduce other evidence, such as evidence that the indorsement was made at the direction or with the consent of the maker, or that it was actually made by the owner of the note or at his direction at a time when the note was not barred, or that payment was actually made by the maker at such time."

In Johnson v. Ghost, 11 Neb. 414, 8 N. W. 391, this court approved the following statement taken from Wachter v. Albee, 80 Ill. 47: "Where a party permits a debt to run, making no effort to collect it until the statute of limitations can be pleaded in bar of the action, he is in no position to call upon the court to aid him upon slight proof; on the contrary, the evidence ought to be clear and satisfactory to overcome the bar of the statute."

In the light of such authorities, we will summarize briefly the evidence.

It is undisputed that the note was executed and delivered to claimant by the maker for a loan of money. The proof of the first payment thereon, May 11, 1933, is not questioned, but that situation is immaterial here because the last alleged payment of $3.50 on August 11, 1942, if voluntarily made, was the only one that could have tolled the statute in any event.

In that connection, claimant's secretary was the only witness in his behalf. She testified that she endorsed the payment on the back of the note. Her evidence in substance was that the maker was in claimant's office on that date, but the money was not paid to the witness by the maker, nor was the maker present when the money was handed to the witness or when credit therefor was endorsed on the note. Neither did the witness then, prior thereto, or thereafter, ever have any conversation with the maker about the alleged payment. The witness never actually saw the payment made and did not know whether it was paid in claimant's office or out in the street. In fact, she admittedly did not know whether or not the payment was ever actually made to claimant. The extent of her information was that the maker and claimant were in his treatment room; he then came out into another room with the money in his hand, and told the witness to "Give Addie credit on the note for that."

Admittedly, the maker was not present at that conversation. There was no evidence that she ever had any knowledge of it or of the claimed part payment or its endorsement on the note. Concededly, the alleged part payment was endorsed on the note after it was barred by the statute. Under such circumstances it could not be said that there was any evidence that the payment was ever voluntarily made or authorized to be made by the maker to claimant as part payment of the note,

or that the endorsement thereof on the note was made at the direction of or with the consent of the maker.

The will of the maker, executed November 27, 1945, and received in evidence, which directed the payment of her just debts, did not specifically refer to or recite that the note involved was such an obligation. Its operation could not have tolled the statute. Neither could its substance throw any light upon the question of whether or not the alleged payment was voluntarily made.

We conclude that if all the evidence adduced were admissible, which we do not deem it necessary to either discuss or decide, it could not lawfully be found or adjudged that the claimant was entitled to recover.

Heineman v. Thimgan, 136 Neb. 357, 285 N. W. 920, relied upon by claimant, is entirely distinguishable upon the facts, which were governed by rules of law related to but different from those at bar.

The verdict and judgment were clearly wrong because not sustained by the evidence. Therefore, the judgment is reversed and remanded for further proceedings.

REVERSED AND REMANDED.